**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| WALMART, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. _____ |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| Q TECHNOLOGIES, INC., | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT OF
NON-INFRINGEMENT AND INVALIDITY OF U.S. PATENT NO. 11,991,239**

Plaintiff Walmart, Inc. ("Walmart") seeks a declaration that Walmart does not directly or indirectly infringe U.S. patent No. 11,991,239 ("'239 patent"), as follows:

**NATURE OF THE ACTION**

1. For the past five years, Walmart has operated under the cloud of litigation lacking merit brought by Q Technologies, Inc. ("Q Tech") on facially abstract and ineligible patents. Walmart has prevailed three times against Q Tech already: in 2021, Q Tech sued Walmart in the Western District of Texas, asserting three patents against its "Walmart Pay" service that were directed to an abstract idea and lacked any inventive concept or technological improvement. Walmart moved for summary judgment of patent ineligibility of all three Q Tech patents, which Judge Albright granted in 2024. The district court determined that "the claims are directed to the abstract idea of sharing content using a unique identifier" and "involve conventional technology like a client-server architecture, associating content with identifiers, and sharing content based on those identifiers." Ex. 1 at 6, 9.

2. Despite its loss, Q Tech appealed to the Court of Appeals for the Federal Circuit, forcing Walmart to defend the result. Last year the Federal Circuit affirmed, explaining that the claims are "directed to 'the abstract idea of sharing content using a unique identifier, … and do[]

not claim a technological improvement to computer networks or file-sharing technology itself." Ex. 2 at 5. The Federal Circuit also agreed the district court "correctly concluded that, '[w]hether taken individually or as an ordered combination," the asserted claims "recite[] only 'well understood, routine and convention activities, identifiers and components, such as servers and clients." *Id.* (first alteration in original). And, following that decision, the Federal Circuit denied Q Tech's petition for panel rehearing and rehearing en banc.

3.      Undeterred by its consecutive losses, this year, Q Tech threatened Walmart with litigation involving *yet another* invalid patent from the *same family* of invalidated patents. Walmart brings this action for a declaratory judgment of non-infringement to put an end to Q Tech's continuing campaign of patent assertions that lack merit.

## THE PARTIES

4.      Plaintiff Walmart is a corporation organized and existing under the laws of the State of Delaware, having a place of business at 1 Customer Drive, Bentonville, Arkansas. Walmart is a people-led, technology-powered omnichannel retailer dedicated to helping people around the world save money and live better by providing everyday low prices to customers in brick-and-mortar retail stores and through e-commerce channels. As part of Walmart's mission to make every day easier for busy families, in 2015 Walmart developed and introduced "Walmart Pay," a secure contactless payment system that enables payment via smartphone. Ex. 3. Walmart employs approximately 1.6 million associates in the United States.

5.      Defendant Q Tech is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 1054 Devine Circle, Brookhaven, Georgia, 30319. Q Tech has previously alleged it "develops innovative cloud-computing based solutions across various industries," but, on information and belief, Q Tech produces no products or services, and it exists solely to assert its patents.

## JURISDICTIONAL STATEMENT

6.      This action arises under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the patent laws of the United States, 35 U.S.C. §§ 1-390.

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), and 2201(a).  An actual, substantial, immediate, and continuing controversy exists between Walmart and Q Tech that requires a declaration of rights by this Court regarding the '239 patent.

8.      This Court has general personal jurisdiction over Defendant Q Tech under the laws of the State of Delaware and consistent with the underlying due process principles of the United States because Q Tech is a corporation organized and existing under the laws of the State of Delaware.

9.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendant Q Tech is incorporated in the State of Delaware.

10.     An immediate, real, and justiciable controversy exists between Walmart and Q Tech as to (i) whether Walmart is infringing or has infringed the '239 patent; and (ii) the validity of the '239 patent.

## Q TECH'S PREVIOUS LITIGATION AGAINST WALMART

11.     On July 29, 2021, Q Tech sued Walmart for infringement of three different patents from a single family, U.S. Patent Nos. 9,635,108; 10,594,774; 10,567,473 (collectively, the "Invalidated Patents") in the Western District of Texas, alleging that Walmart's "Walmart Pay" system infringed the asserted claims. *Q Techs., Inc. v. Walmart, Inc.*, No. 6:21-CV-00779-ADA, 2024 WL 1146150 (W.D. Tex. Mar. 6, 2024).  On March 6, 2024, U.S. District Court Judge Alan Albright granted Walmart's motion for summary judgment, determining that the asserted claims of the Invalidated Patents are ineligible for patenting under 35 U.S.C. § 101.  *Q Techs., Inc. v.*

3

*Walmart, Inc.*, 6:21-CV-00779-ADA, D.I. 201 (Ex. 1).  Q Tech appealed to the Court of Appeals for the Federal Circuit.  The Federal Circuit affirmed the judgment of patent ineligibility and invalidity.  *Q Techs., Inc. v. Walmart, Inc.*, No. 24-1667, D.I. 44 (Fed. Cir. Feb. 5, 2026) (Ex. 2).  The Federal Circuit denied Q Tech's petition for panel rehearing and rehearing en banc. *Id.*, D.I. 50 (Fed. Cir. Apr. 30, 2026) (Ex. 6).

**COUNT I**

*(Declaratory Judgment of Non-Infringement of the '239 patent)*

12.     Plaintiff realleges and incorporates herein by reference the allegations stated in paragraphs 1-11 of this Complaint as if set forth fully herein.

13.     Q Tech claims to own all right, title, and interest in the '239 patent.

14.     On June 11, 2026, Q Tech stated in correspondence to Walmart: "Walmart infringes one or more claims of U.S. Patent No. 11,991,239 (the ''239 patent'), which was granted on March 21, 2024. [1]  Specifically, Walmart infringes through its 'Walmart Pay' system, including associated server, smartphone-app, and point-of-sale-device functionality."   Q Tech also included an infringement chart mapping claims 9-18 of the '239 patent against Walmart Pay, as Exhibit A to its June 11 correspondence.  Q Tech claims to own all rights, title, and interest in the '239 patent.  A true and correct copy of the '239 patent is attached as Ex. 4.  The '239 patent claims priority to each of the three previously-asserted Invalidated Patents.  *See* Ex. 4.

15.     Walmart Pay does not directly or indirectly infringe any claim of the '239 patent, either literally or under the doctrine of equivalents, and no third party infringes any claim of the '239 patent by using Walmart Pay.  Walmart has not caused, directed, controlled, conditioned any benefit upon, requested, or facilitated any such infringement, much less with specific intent to do

---

[1] Q-Techs email incorrectly stated the issue date of the '239 patent; the correct date is May 21, 2024.  *See* Ex. 4.

4

so.  Neither Walmart Pay's server infrastructure nor smartphone applications are designed for use in any combination which infringes any claim of the '239 patent.

16.    Specifically, Walmart Pay does not satisfy the claim limitation "wherein authorization of the plurality of authorized clients is associated with an authorized application operating on the plurality of authorized clients" under the plain and ordinary meaning of the term. *Every Walmart Pay user* with the application installed on his or her smartphone can access the transaction information (which Q Tech alleges is the "shared content"), not just "authorized clients."

17.    As an additional example, Walmart Pay does not satisfy the "first client" limitation under the plain and ordinary meaning of the term.  Q Tech identifies the Walmart POS device as the "first client" of a "plurality of clients," and a smartphone running the Walmart Pay application as the "second client."  But the Walmart POS terminal is not a first one of the "plurality of authorized clients associated with an authorized application operating on the plurality of authorized clients," at least because the software running on the POS terminal is not a smartphone application.

18.    For at least these reasons, a substantial, immediate, real, and actual controversy exists between Walmart and Q Tech regarding the alleged infringement of any claim, including claims 9-18, of the '239 patent, by Walmart Pay.  A judicial declaration is necessary to determine the parties' respective rights regarding the '239 patent.

## COUNT II

*(Declaratory Judgment of Invalidity and Patent-Ineligibility of the '239 Patent)*

19.    Plaintiff realleges and incorporates herein by reference the allegations stated in paragraphs 1-18 of this Complaint as if set forth fully herein.

20.    Q Tech claims to own all right, title, and interest in the '239 patent.

5

21.    All claims of the '239 Patent, including claims 9-18, are invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112, and the rules, regulations, and laws pertaining thereto.

22.    The '239 patent shares a common specification with the Invalidated Patents.

23.    Claims of the '239 patent, including claims 9-18, are similar and directed to substantially the same invention as, the claims of the Invalidated Patents.    For example, independent claim 1 of the '108 patent and claim 1 of the '239 patent are both directed to a method for sharing content that includes a server that associates identifiers with content to be shared.  *Cf.* Ex. 5, 19:32-33 ("determining, at the server, that the ***unique identifier is associated with the shared content***"); Ex. 4, 18:66-19:4 ("storing, in one or more databases associated with a server, … a computer-generated identifier"); *id.,* 19:36-38 ("… one or more entries of ***shared content associated with the computer-generated identifier***.").  Likewise, claim 1 of both the '108 and '239 patents recites a first client device providing the identifier to a second client device via QR code. *Cf.* Ex. 5, 19:8-14 ("***receiving, at the second client, the unique identifier, from the first client***, wherein the second client receives the unique identifier ***via… QR code scan***."); Ex. 4, 19:24-27 ("wherein the ***second client receives the computer-generated identifier from the first client by***… ***scanning***, by the second client, ***a QR code*** presented by the first client.").  Next, the server receives a request from the second client including the identifier.  *Cf.* Ex. 5, 19:30-31 ("***receiving at the server, a request from the second client***, the request comprising ***the unique identifier***"); Ex. 4, 19:14-16 ("***receiving***, ***via an API call handler of the server, a request from… a second client*** comprising ***the computer-generated identifier***.").  Finally, the server shares the content associated with the identifier with the second client.  *Cf.* Ex. 5, 19:34 ("***sending the shared content to the***

*second client*"); Ex. 4, 19:39-40 ("***transmitting***, via the API call handler of the server, the one or more entries of ***shared content to the second client***.") (***emphases added***).

24.     Judge Albright and the Court of Appeals for the Federal Circuit determined that the claims of the Invalidated Patents were directed to the abstract idea of "'sharing content using a unique identifier,' by matching a unique identifier with a location." Ex. 1 at 6; Ex. 2 at 5. Additionally, both the district court and Federal Circuit determined that the claims of the Invalidated Patents, "do[] not claim a technological improvement to computer networks or file-sharing technology itself." Ex. 2 at 5. The claims of the '239 patent suffer from the same deficiencies, and, therefore, are also patent-ineligible and invalid for claiming abstract subject matter in violation of 35 U.S.C. § 101.

25.     Likewise, the claims of the '239 patent are invalid at least for lack of novelty under 35 U.S.C § 102 and obviousness under § 103. For example, U.S. Patent Publication No. 2013/0210461 to Moldavsky, et al. ("Moldavsky") and U.S. Patent Publication No. 2013/0217332 to Altman, et al. ("Altman") disclose, alone or in combination, every limitation of the asserted claims. Moldavsky's system provides, *inter alia,* proximity-triggered delivery of promotional materials to mobile devices (i.e., second clients) using short-range broadcasts, such as Bluetooth BLE, from in-store transceivers (i.e., first clients) and server selection and delivery of relevant content stored in one or more ***databases*** associated with the servers. Altman discloses, *inter alia,* a proximity-based communication system in which a wireless identity transceiver broadcasts a ***computer-generated identifier*** to nearby mobile devices to facilitate communication of location-dependent information, and an "API module… that may include functions and interfaces for initiating operations" that "handle[s] application programming interface (API) commands."

Additionally, certain claims of the '239 patent are invalid under 35 U.S.C. § 112 for lack of enablement and written description.

26.    As a result of the allegations described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. A judicial declaration of invalidity and patent ineligibility is necessary and appropriate so that Walmart may ascertain its rights regarding the '239 patent.

## PRAYER FOR RELIEF

WHEREFORE, Walmart respectfully prays for judgment and relief as follows:

A. Declaratory judgment that Walmart does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '239 patent;

B. Declaratory judgment that all claims of the '239 patent are invalid, patent-ineligible, and unenforceable;

C. Judgment in favor of Walmart and against Q Tech on each of Walmart's claims;

D. An injunction against Q Tech, and all persons acting on its behalf or concerting with it, restraining them from further prosecuting or instituting any action alleging that any Walmart product, service, or technology, or others' use thereof, infringes any claim of the '239 patent;

E. Finding that this is an exceptional case under 35 U.S.C. § 285;

F. Awarding Walmart its costs and attorneys' fees in conjunction with this action; and

G. Awarding such further and relief as the Court deems just and proper.

## JURY DEMAND

Walmart demands a jury trial of all issues and claims so triable.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Andrew Gish
GISH PLLC
41 Madison Avenue
New York, NY 10010
Tel: (212) 518-7380

Robert N. Kang
GISH PLLC
50 California St.
San Francisco, CA 94117
Tel: (415) 630-8282

Dated: August 4, 2026
13082536 / 21775.00143

By:  */s/ David E. Moore*
     David E. Moore (#3983)
     Bindu A. Palapura (#5370)
     Peter T. Sabini (#7655)
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, DE  19801
     Tel:  (302) 984-6000
     dmoore@potteranderson.com
     bpalapura@potteranderson.com
     psabini@potteranderson.com

*Attorneys for Plaintiff Walmart, Inc.*

9